IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PRIYANK SHAH

:

:

v.                              : Civil Action No. DKC 2004-4059

:

COLLECTO, INC., et al.

:

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this debt collection case are: (a) the motion of Defendant Collecto, Inc., doing business as Collection Company of America ("CCA") to dismiss Plaintiff's complaint, or in the alternative, for summary judgment on all counts ("CCA's Motion"), paper no. 9; (b) Plaintiff Priyank Shah's ("Plaintiff") partial consent motion to file a surreply, paper no. 19; and (c) Plaintiff's motion to stay decision pending discovery, paper no. 20. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court denies Plaintiff's motion to stay; grants in part and denies in part Plaintiff's motion for leave to file a surreply; and grants CCA's Motion.

**I.   Background**

   **A.   Factual Background**

The following facts are either undisputed or viewed in the light most favorable to Plaintiff.  On February 19, 2003, Defendant University of Bridgeport ("UB") placed Plaintiff's account with CCA for collection.  On February 20, 2003, CCA sent a notice to Plaintiff demanding a payment of $6,013.68 allegedly owed to UB for tuition and other charges.  On February 21, 2003, CCA accessed Plaintiff's credit report in conjunction with its collection activities.  CCA sent a follow-up notice to Plaintiff on March 20, 2003.  Plaintiff did not receive either of the notices because CCA attempted to contact Plaintiff at an incorrect or prior address.[1]  *See* paper no. 9, ex. A.  On March 31, 2003, CCA reported the debt to the three major credit reporting agencies ("CRAs"): Experian, TransUnion, and Equifax.

After obtaining Plaintiff's correct address and phone number, CCA contacted Plaintiff by telephone and sent a renewed collection notice on November 25, 2003.  Plaintiff disputed the charge over the telephone, stating that he had transferred away from UB and had paid his tuition in full.  Four days later, he wrote to CCA and formally disputed the charge.  He requested a written verification of the debt, and demanded CCA send

---

[1] The first time Plaintiff learned of the alleged debt was on November 25, 2003, when he received a telephone call from CCA requesting payment.

notification of his dispute to UB and any CRA to which CCA may have reported the debt. Paper no. 9, ex. B. Defendant CCA received Plaintiff's dispute letters on December 2 and December 4, 2003.[2] CCA sought verification of the debt from UB on November 26, 2003, and by December 2, 2003, CCA had updated Plaintiff's account to reflect Plaintiff's contentions and informed all three CRAs of the dispute. Paper no. 9, ex. 1, at 3.

UB notified CCA on February 9, 2004, that Plaintiff's account had been referred for collection in error. Plaintiff did not in fact owe UB any tuition money, and UB instructed CCA to delete the account from its records and restore Plaintiff's credit reports. CCA marked Plaintiff's account as cancelled and contacted the CRAs to request that they remove the UB account from Plaintiff's credit report. By March 11, 2004, Plaintiff's account had been deleted in CCA's internal files, and by mid-March, Equifax and TransUnion both confirmed that the item had been deleted from their records.[3]

**B. Unsupported Factual Allegations**

---

[2] CCA states that it received two identical letters from Plaintiff, both dated November 29, 2003.

[3] CCA notes that Experian, the other major CRA, does not typically provide collection agencies with confirmation when a debt is deleted. Paper no. 9, ex. 1, at 4.

A number of Plaintiff's claims are based on allegations that
CCA took action between January 1 and January 29, 2004, after
Plaintiff disputed the debt.[4]   Paper no. 12.   In the amended
complaint, Plaintiff alleges that prior to commencing a search
for a new home, he "obtained and checked his credit report with
the three major credit reporting agencies" in December 2003 and
early January 2004.   Paper no. 12, at 3.   In his affidavit,
Plaintiff explains that he obtained his credit report from
Experian in December 2003, by viewing the report over the web,
and that he ordered his credit report over the telephone from
both Equifax and TransUnion on January 1, 2004.   Paper no. 17,
ex. 1.   Plaintiff states that his credit report from all three
agencies "came out without any negative items reported, with no
mention of the collection account or any debt from either UB or
CCA."   *Id.*

From this, Plaintiff argues that between January 1 and
January 29, 2004, CCA "re-started" or "continued" collection
efforts.   Paper no. 12.   Plaintiff admits that CCA initially

---

[4] The amended complaint expressly bases these claims on
CCA's January 2004 actions.   In later filings, Plaintiff appears
to argue that CCA's initial March 2003 reporting to the CRAs was
also a basis for a number of the alleged violations.   *See* paper
no. 17 ("[CCA] thus violated § 1692e(2) by reporting a debt to
the CRAs that was not in fact owed at all.").   Even if Plaintiff
were to move to amend his complaint to set forth this
contention, Plaintiff's claims would still fail.   *See* discussion
*infra*, Section III.

reported the UB debt to the CRAs in March 2003, but claims that the January 1, 2004 credit report did not show the UB debt; on January 29, 2004, the debt was listed as disputed on Plaintiff's credit report. Paper nos. 12, ex. 3, 17.  Plaintiff argues that this is evidence that CCA tried to collect the debt at some point during January of 2004.  Paper no. 12.

Plaintiff does not, however, provide a copy of any of his January 1, 2004, credit reports to support his assertions, and Fed.R.Civ.P. 56(e) requires that affidavits "shall set forth such facts as would be admissible in evidence," and that "[s]worn or certified copies of all papers . . . referred to in an affidavit shall be attached thereto or served therewith." Plaintiff's declaration violates the best evidence rule, which provides that a party who seeks to prove the content of a writing generally must introduce an original writing or a permitted copy, or prove that no original or copy is available or that the writing involves a collateral matter.  Fed.R.Evid. 1002, 1004; *see also United States v. Angle*, 230 F.3d 113, 120 (4th Cir. 2000).  Plaintiff's allegation that the change to his credit report between January 1 and January 29, 2004 implied further collection activity on the part of CCA requires him to prove the contents of the January 1, 2004 report.  Plaintiff must either produce a copy of the report, or, in order to rely

on other evidence of its contents, prove that the report is not available, or show that the report involves a collateral issue – all of which Plaintiff fails to do.   Because Plaintiff specifically states that he obtained his credit report from the three major credit reporting agencies, he cannot argue that the January 1, 2004 credit report was "unavailable."   Plaintiff also cannot assert that the credit report involves a collateral matter, because it is central to the factual allegations on which Plaintiff bases a substantial number of his claims against CCA.   Plaintiff, thus, has not produced any evidence that CCA took any action to re-start or continue collection efforts in January of 2004.

**A.    Procedural Background**

On December 29, 2004, Plaintiff filed an initial six-count complaint against Defendants CCA and UB.[5]   After a stipulated dismissal of a portion of Plaintiff's Fair Credit Reporting Act ("FCRA") claim, and a modification of his Fair Debt Collection Practices Act("FDCPA") damages claim, Plaintiff filed an amended complaint on March 4, 2005.   Paper no. 12.   He alleges violations of the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g; the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law II § 14-202; and the FCRA, 15 U.S.C. § 1681b. Finally, Plaintiff asserts several tort claims under Maryland state law – defamation, false light invasion of privacy, and negligence.

CCA moved for dismissal of Plaintiff's complaint, or in the alternative, for summary judgment on all counts on February 28, 2005.   CCA contends that the factual basis for Plaintiff's claims is erroneous, as it has "documented every significant aspect of its collection activity in connection with this matter and can attest to all such matters."   Paper no. 9, at 2.   CCA further alleges that the legal bases for Plaintiff's statutory and common law claims are insufficient, and it is thus entitled

_____

[5] UB filed an answer on February 1, 2005.   A separate scheduling order will be entered following resolution of the pending motions.

to judgment in its favor as  a matter of law.  Following the
filing of Plaintiff's Response in Opposition and CCA's Reply,
Plaintiff filed a Partial Consent Motion for Leave to File a
Surreply[6] and a Motion to Stay Decision Pending Discovery on
April 14, 2005.

## II.  Partial Consent Motion for Leave to File a Surreply

### A.    Standard of Review

Surreplies are allowed only with leave of the court, Local
Rule 105.2.a, and "may be permitted when the moving party would
be unable to contest matters presented to the court for the
first time in the opposing party's reply."  *Khoury v. Meserve,*
268 F.Supp.2d 600, 605 (D.Md. 2003), *aff'd,* 112 Fed.Appx. 923
(4th Cir. 2004).

### B.   Analysis

In its Reply to Plaintiff's Response in Opposition, paper
no. 18, CCA, for the first time, argues that Plaintiff's FDCPA
claims are barred under the one-year statute of limitations set
forth in 15 U.S.C. § 1692k(d).  CCA concedes that this argument
was not previously raised, and has consented to Plaintiff filing
a surreply on this issue, subject to the court's approval.

---

[6] Acknowledging that it asserted a new statute of
limitations argument in its Reply, CCA partially consented to
Plaintiff's filing of a surreply with regard to that issue.  CCA
opposes Plaintiff's Surreply Motion to the extent that it
addresses additional issues.  Paper no. 22.

Paper no. 22.  Because denying Plaintiff the opportunity to file a surreply would mean that Plaintiff would not have any opportunity to contest CCA's arguments, this court will grant Plaintiff's motion to file a surreply on the statute of limitations issue, and will consider Plaintiff's arguments in its analysis.[7]  *See Khoury*, 268 F.Supp.2d at 605.

Plaintiff also seeks to file a surreply to "re-address one legal issue regarding the interplay of potentially over-lapping and confusing sections of the FDCPA."  Paper no. 19.  As Plaintiff admits through the use of the term "re-address," Plaintiff does not seek to respond to any new issue brought up for the first time in CCA's reply, and Plaintiff has previously had ample opportunity to clear up any such "confusion" that may exist.  The motion to file a surreply on the FDCPA issue is therefore denied.

**III.   Motion to Dismiss/Motion for Summary Judgment**

**A.   Standard of Review**

**1.   Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243

---

[7] Plaintiff attached the surreply when filing the motion with this court on April 14, 2005.

(4th Cir. 1999).   Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.   *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   The court must disregard the contrary allegations of the opposing party.   *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).   The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265,

286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading and is not usually an appropriate ground for dismissal, unless "the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996); see also *Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002).  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action.  *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42. 46-48 (2nd Cir. 1991)).

### 2.  Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of

proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### A.   Analysis

### 1. Count 1:   FDCPA Claims

Plaintiff alleges that CCA violated various provisions of the FDCPA, which protects consumers from "abusive and deceptive debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 500 (D.Md. 2004). Section 1692a(6) includes in the definition of debt collector "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  CCA is a "debt collector" within the meaning of the FDCPA, but as a threshold matter Plaintiff must also show that CCA used "prohibited practices . . . in an attempt to collect the debt."  *Akalwadi*, 336 F.Supp.2d at 500.

### a.   Motion to Dismiss

### i.   Statute of Limitations

CCA argues that Plaintiff's FDCPA claims are barred by the statute of limitations, paper no. 18, but appears to base this argument on a misunderstanding of the complaint.  Although Plaintiff does allege that CCA's accessing of his credit report in February 2003 and attempting to collect a debt that was not owed in November 2003 violated his rights, he does so as violations of the FCRA in count three, and MCDCA in count two,

respectively, and not the FDCPA in count one.  The actual claims in count one are timely.

The statute of limitations under the FDCPA is one year. § 1692k(d).  As CCA correctly asserts, generally the limitations period begins to run when the FDCPA is violated, *see Akalwadi*, 336 F.Supp.2d at 501 (citing *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992)), but for violations of the FDCPA relating to credit agency reporting, the limitations period begins to run when the consumer knew or should have known of the violation (i.e., when the consumer obtained a credit report containing a possible FDCPA violation).  *Akalwadi*, 336 F.Supp.2d at 501 (finding statute of limitations began to run when plaintiff accessed his credit report).

In the amended complaint, Plaintiff bases his FDCPA claims on: (a) CCA's act of reporting a false debt to CRAs; and (b) CCA's failure to report the debt as disputed.  The complaint itself does not show that Plaintiff knew or should have known about any reporting action until he accessed his credit report in January of 2004, nor does reference to Plaintiff's November 25, 2003 letter establish such knowledge.  Rather, the letter states: "if you have reported me to a credit reporting agency . . . ."  Paper no. 17, ex. 1.  Because the complaint does not

"clearly reveal the existence of a meritorious affirmative defense," CCA's motion to dismiss will be denied.

### ii.  Section 1692g

Plaintiff alleges that CCA violated § 1692g, by "fail[ing] to validate the alleged debt within 30 days" of receiving Plaintiff's November 29, 2003, dispute letter, paper no. 12, but Plaintiff misreads the statute because there is no such duty imposed on CCA.  Instead, the statute states that a debtor has thirty days after receiving a debt validation notice from a debt collector in which to dispute the debt.  § 1692g.  The debt collector must then cease "collection efforts" until it verifies the debt, but there is no specified time period within which the debt collector must complete the verification.  For the reasons stated, "[P]laintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley*, 355 U.S. at 45-46, and pursuant to Fed.R.Civ.P 12(b)(6) the court will grant CCA's motion to dismiss for failure to state a claim.

### b.  Motion for Summary Judgment

### i.  Section 1692d

Because the court will consider matters outside of the pleadings in addressing both the remaining FDCPA claims as well as the other counts alleged in the complaint, the remainder of CCA's Motion is treated as one for summary judgment.  *See* Fed.R.Civ.P. 12(b), 56; *Gadsby by Gadsby v. Grasmick*, 109 F.3d

940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

Section 1692d states: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."   The statute also provides a nonexclusive list of prohibited conduct (e.g., use or threat of violence, use of obscene language).

Plaintiff claims that CCA violated § 1692d by reporting the alleged debt to a CRA after "being advised not to."  Paper no. 12.   First, § 1692d(3) specifically excludes from its prohibition, publishing the name of a consumer who allegedly refuses to pay debts to a "consumer reporting agency." Therefore, CCA's initial reporting in March of 2003 to the CRAs, which are "consumer reporting agencies," was not a violation of the statute.  *Spencer v. Hendersen-Webb, Inc.* 81 F.Supp.2d 582, 598 (D.Md. 1999).   Second, even assuming that § 1692d is violated when a collection agency "re-reports" the name of a debtor after the debtor has disputed the debt,[8] there is no evidence that CCA engaged in such action; the only communication

---

[8] It is unclear if "re-reporting" would constitute "conduct the natural consequence of which is to harass, oppress, or abuse . . ." § 1692d.

CCA had with the CRAs was to inform them of Plaintiff's dispute, which was statutorily required and cannot provide the basis for Plaintiff's § 1692d claim.[9]

### ii.  Section 1692e(2)(A)

Section 1692e(2)(A) states that a debt collector may not falsely represent "the character, amount, or legal status of any debt."  The court in *Akalwadi* noted that "a debt collector's reporting of a consumer's debt to a credit reporting agency would be covered by FDCPA §1692e, if the communication is false, deceptive, or misleading." 336 F.Supp.2d at 503.  Moreover, the language of the statute does not require a plaintiff to establish that a defendant acted with intent to represent falsely or with knowledge of the falsehood.  *See* § 1692e(2)(A); *Spencer*, 81 F.Supp.2d at 592 ("The language of the [FDCPA] is clear: a debt collector's mistaken belief, . . . is not sufficient to preclude liability.").  Pursuant to § 1692k(c), however, liability may be avoided where a debt collector can establish a bona fide mistake defense.  Section 1692k(c) states that:

---

[9] The FDCPA requires a collection agency to inform CRAs if a debtor disputes the debt. § 1692e(8).

19

> A debt collector may not be held liable in
> any action brought under this subchapter if
> the debt collector shows by a preponderance
> of evidence that the violation was not
> intentional and resulted from a bona fide
> error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any
> such error.

Plaintiff's claim fails whether it is based on CCA's initial March 2003 reporting or CCA's later reporting to the CRAs that the debt was disputed.  First, because Plaintiff did dispute the debt, this latter communication would not be a false, deceptive, or misleading representation, and therefore would not violate § 1692e(2)(A).  Second, if Plaintiff bases this claim on the initial March 2003 reporting, the claim still fails because CCA can successfully assert the bona fide mistake defense under § 1692k(c).  Plaintiff argues that CCA is precluded from asserting a § 1692k(c) defense under *Spencer*, 81 F.Supp.2d 582. Plaintiff correctly cites *Spencer* for the proposition that the bona fide mistake defense is construed narrowly, 81 F.Supp.2d at 591, but his reliance on *Spencer* is otherwise misplaced. Plaintiff seems to argue that the court in *Spencer* "specifically rejected the computer error defense" in each and every case, paper no. 17, at 11, however, this misstates the court's opinion.  The court did not reject the possibility that a computer error could be a viable basis to establish the bona

fide error defense.   Instead, the court rejected the defense in that particular case because the debt collector failed to present evidence that the error was bona fide.   *Spencer*, 81 F.Supp.2d at 592.   In fact, evidence showed that the defendant debt collector intentionally had procedures in place that were responsible for the computer error.[10]   *Id*.   It was based on this information that the court rejected the defense, and not, as Plaintiff argues, because a computer error cannot constitute the basis for a valid defense under § 1692k(c).   *See   Spencer*, 81 F.Supp.2d at 592.

Nor is the bona fide mistake defense precluded under *Akalwadi*. 336 F.Supp.2d 492.   The court in *Akalwadi* questioned the application of the bona fide mistake defense and denied the defendant's motion for summary judgment with regard to a claim that the defendant violated § 1692e(2)(A) by incorrectly reporting the plaintiff's debt to CRAs.   *Id. at* 503-04. *Akalwadi* can be distinguished in several regards.   First, the collection agency in *Akalwadi* was responsible for the reporting error; the agency "double-reported" the plaintiff's debt.   *Id*. at 503.   Second, the plaintiff in *Akalwadi* contested the error

---

[10] The court found that the debt collector in *Spencer* intentionally added a fifteen percent attorneys' fee onto every account, regardless of whether it was owed.   *Id*.

on several occasions, but the collection agency either refused to reinvestigate or reinvestigated and determined that the credit report was accurate, despite its mistake.  *Id*. at 498-99. The court in *Akalwadi* concluded that notwithstanding the defendant's assertions that it had "reasonable" procedures in place to prevent the errors, the issue was fact-intensive and therefore one for the jury.  *Id.* at 504.

Here, it is undisputed that UB committed the "error" when it incorrectly submitted an already paid debt to CCA for collection.  Based on the record, CCA had no reason to know of the potential invalidity of the debt until Plaintiff disputed the debt in late November 2003.  Paper no. 9.[11]  Almost immediately after receiving notice of the dispute, CCA complied with its statutory obligation and alerted the CRAs of the dispute, and contacted UB to investigate the validity of the debt.  *See id*; paper no. 17.  After receiving confirmation from UB that the debt was sent to it in error, CCA notified the CRAs to have the debt deleted from Plaintiff's credit report.  Paper no. 9.

---

[11] Plaintiff states "[c]ertainly by November 25, 2003. . . CCA knew no debt was owed[,]" but fails to provide any additional evidence to show how CCA could have acquired such knowledge any earlier.  Paper no. 17, at 9.

Based on these facts, the § 1692k(c) defense is available to CCA because the violation was not intentional and resulted from a bona fide mistake.  Unlike in *Akalwadi*, CCA was not the cause of the error and promptly took steps to correct the situation and avoid unlawful reporting to the CRAs.  *See also In re Creditrust Corp.*, 283 B.R. 826 (Bankr. D.Md. 2002) (finding procedures were reasonable where, upon learning of the possibility that creditor made an error in sending debt to collection agency, agency changed the status of debtor's account and alerted the CRAs).  In addition, contrary to Plaintiff's arguments, in order to establish the bona fide mistake defense, a debt collector is not required to prove that it had procedures in place to guard against the unknown or potential errors of others – what is important in a factual situation such as this is that the debt collector took prompt steps to correct any errors once it received notice.  *See id*.

The statutory framework of the FDCPA also establishes that CCA may rely on the bona fide mistake defense.  The FDCPA expressly provides procedures that a debt collector must take when a debtor disputes a debt.  For example, § 1692g(b) states that if a debt is disputed, the debt collector must "cease collection of the debt . . . until the debt collector obtains verification of the debt . . . ."  In addition, § 1692e(8)

requires a debt collector to inform CRAs when a debt it has previously reported is disputed. Both § 1692g(b) and § 1692e(8) accept that there are instances when a debt that is reported may not actually be owed, but there is nothing in the statute stating that where a debt is later found to be invalid, that any initial collection efforts, including reporting the debt to a CRA, are per se violations of § 1692e(2)(A). *See Bleich v. Revenue Maximization Group, Inc.*, 233 F.Supp.2d 496, 500 (E.D.N.Y. 2002) ("The specific procedure for debt validation must have been intended to avoid FDCPA litigation based solely on the debt's validity as communicated to the collection agency by the creditor."); *Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459, 462 (M.D.La. 1996) (noting the key issue is whether defendant has acted "unscrupulously in attempting to collect a debt," and not the actual validity of the debt).

### iii.   Section 1692e(5)

Section 1692e(5) states that it is a violation for a debt collector to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff claims CCA violated this section when it reported the false debt to the

CRAs, but other than arguing that the FDCPA is "intended to prohibit new and ingenious forms of collector abuse or deception," paper no. 17, at 11, Plaintiff offers no evidence that reporting to a CRA would violate § 1692e(5).  On its face, the statutory language does not encompass such a claim, and the court can find no cases in support.  Moreover, the FDCPA suggests that there may be some instances where a debt that was reported is later found to be invalid, and prescribes specific procedures for debt collectors to undertake when such a situation occurs.  *See* discussion *supra*, p. 20.  This negates Plaintiff's claim that the reporting of a false debt would constitute a per se violation of § 1692e(5).[12]

### iv.  Section 1692e(8)

Section 1692e(8) states that a debt collector is prohibited from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  The evidence shows that the only communication CCA had with the CRAs after notice of Plaintiff's dispute was to alert the CRAs of such dispute, and this is specifically required under § 1692e(8).  Plaintiff argues that

---

[12] The same result follows whether Plaintiff bases the claim on CCA's initial March 2003 reporting or on CCA's December 2003 reporting that the debt was disputed.

CCA "still" violated this provision of the FDCPA even if CCA reported the debt as disputed and did not have "actual" knowledge of the debt's status, because the statute adopts a "knew or should have known standard." Paper no. 17. It appears that Plaintiff is arguing that after a debt is disputed, a debt collector violates the statute by reporting the dispute, because after being aware of such a dispute, the debt collector "should know" that the debt is invalid. Given § 1692e(8)'s requirement that CCA report the dispute, Plaintiff's argument is illogical.

Although it is not clear, Plaintiff may be arguing that knowledge of the dispute triggers an affirmative duty on the part of a debt collector to have the CRAs delete the debt from a debtor's credit record pending investigation. Plaintiff offers no support for this assertion, either from case law or from the text of the statute itself; in fact, the absence of such language from 1692e(8) implies the lack of an affirmative duty. Plaintiff does cite to a Federal Trade Commission ("FTC") opinion letter, paper no. 17, ex. 6, in support of his argument that a debt collector must not report or continue to report a debt after a debtor notifies it of a dispute, but as both Plaintiff and CCA rightfully point out, the FTC letter also states, "if a dispute is received after a debt has been reported

to a consumer reporting agency, the debt collector is obligated by Section 1692e(8) to inform the consumer reporting agency of the dispute."

If Plaintiff asserts that CCA's initial March 2003 reporting is the basis for the § 1692e(8) violation, this argument also fails because the statute expressly requires knowledge, and Plaintiff provides no evidence that CCA knew or should have known that the debt was invalid when it initially reported the information to the CRAs.  *Id.; see also In re Creditrust Corp.*, 283 B.R. at 831-32.    **v.  Section 1692f(1)**

Section 1692f(1) is designed to prevent "unfair or unconscionable" means of debt collection, and it specifically prohibits a debt collector from "the collection any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  There is no evidence that CCA engaged in any collection activity following Plaintiff's dispute of the debt.  To the extent that Plaintiff bases this claim on CCA's initial March 2003 reporting, CCA may successfully rely on § 1692k(c)'s bona fide mistake defense. *See* discussion *supra*, pp. 17-20.

**2.  Count 2:  MCDCA Claims**

The MCDCA, codified at Md. Code Ann., Com. Law II §§ 14-201 - 14-204, "protects consumers against certain threatening and

underhanded methods used by debt collectors in attempting to recover on delinquent accounts." *Spencer*, 81 F.Supp.2d at 594. Plaintiff alleges that CCA violated various sections of the MCDCA, including: (a) § 14-202(3) (stating a debt collector may not "[d]isclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false"); (b) § 14-202(5) (stating "[e]xcept as permitted by statute," a debt collector may not "disclose or threaten to disclose to a person other than a debtor or his spouse . . . information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information"); and (c) § 14-202(8) (stating a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist").

As indicated by the express terms of the specific statutory provisions that CCA is alleged to have violated, Plaintiff must prove some knowledge component with regard to CCA's actions. *See Akalwadi*, 336 F.Supp.2d at 511; *Spencer*, 81 F.Supp.2d at 595.[13] In *Spencer*, the court observed that the construction of

_____

[13] Plaintiff appears to contradict himself in his Opposition, on the necessity of proving CCA's "knowledge." (continued...)

the "knowledge" requirement under the MCDCA was a matter of first impression. *Id.* at 594.[14]  Noting the remedial aim of the statute, the court in *Spencer* held that, with regard to mistakes of fact, knowledge can either mean actual knowledge or that the defendant acted with reckless disregard. *Id*. at 595.  *See also Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F.Supp.2d 471, 475 (D.Md. 2004) (adopting the standard set forth in *Spencer).* Explaining its holding, the court in *Spencer* stated: "This standard comports with the level of knowledge required for the similar common law actions of fraud . . . and defamation." *Id*. (citing *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 234 (1995); *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 596 (1976)). As the court in *Ellerin* noted, "'reckless disregard' . . . does not mean a situation where the defendant honestly, but negligently, believed that the representation was true."  337 Md. at 234.

---

[13](...continued)
Initially,  Plaintiff states "[a]ll three subsections [of the MCDCA] have a 'knowledge' component and requirement[.]" Paper no. 17, at 13.  Later, however, Plaintiff states: "[d]etermining CCA's knowledge . . . is not necessary to resolve Plaintiff's claim" under § 14-202(5).  *Id.* at 14.

[14]  The court in *Spencer* considered claims brought under §§ 14-202(3) and 14-202(8), but its reasoning can likewise be applied to § 14-202(5).

Plaintiff argues that CCA violated §§ 14-202(3) and (5) by reporting a debt not owed to a CRA, and § 14-202(8) by attempting to collect on a debt that was not owed.  In order to prevail, Plaintiff would have to establish that CCA: (a) knew that the debt was invalid, or acted with reckless disregard as to its validity, when it disclosed information about the debt to the CRAs (§ 14-202(3)); (b) disclosed information to the CRAs regarding the alleged debt with knowledge that the CRAs had no legitimate business need for the information, or with reckless disregard as to whether such need existed; or (c) attempted to collect on a debt with knowledge that the debt was not owed, or with reckless disregard as to whether it was owed or not.  *See Spencer*, 81 F.Supp. 2d at 595.

Plaintiff argues that because CCA knew by November 2003 that the debt was disputed, whether or not CCA "knew" the debt was invalid is "not resolvable on a summary judgment motion" and is "more properly for the jury to decide."  Paper no. 17, at 13.  Further, Plaintiff argues that CCA's knowledge is not necessary to resolve Plaintiff's § 14-202(5) claim because "CCA violated this provision by continued reporting to one or more credit bureaus through sometime in February 2004, even if CCA reported

the debt as disputed," because the CRAs had no legitimate business need for this information. *Id*. at 14.[15]

As CCA notes, Plaintiff fails to point to any evidence to show that CCA had *any reason* to doubt the validity of the debt when it first attempted to collect the debt and when it initially reported the debt to the CRAs. Plaintiff therefore fails to establish the requisite knowledge component with regard to CCA's initial actions. In addition, CCA's later report of the dispute to the CRAs cannot serve as the basis for a MCDCA violation. When CCA communicated Plaintiff's dispute to the CRAs, this was not false information, and therefore CCA's actions could not violate § 14-202(3) (requiring communication of information that is false). Neither could CCA violate § 14-202(5) because it expressly exempts acts "permitted by statute." Here, not only was the report of the dispute "permitted," it was mandated under the FDCPA. Finally, there is no evidence that following Plaintiff's dispute of the debt, CCA claimed, attempted, or threatened to "enforce a right with knowledge that the right does not exist." § 14-202(8). Instead, evidence shows that after Plaintiff disputed the debt, CCA ceased collection

_____

[15] Plaintiff appears to be implying that CCA had an affirmative duty to have the disputed debt deleted from Plaintiff's credit report pending resolution. As noted in the court's analysis of Plaintiff's FDCPA claims, it can find no basis for this argument.

efforts and took immediate steps to contact UB in order to verify the debt.

### 3.  Count 3:  FCRA Claim - § 1681b(a)

Section 1681b(a) establishes permissible purposes for furnishing a consumer report.  On its face, § 1681b(a) appears to apply only to those furnishing reports (i.e., CRAs), but the Fourth Circuit has concluded that users of the reports must also comply with the statutory provision.[16]   *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) (stating that users are "subject to civil liability . . . if [the user's] non-compliance with section 1681b was willful").  *See also Korotki v. Attorney Servs. Corp.*, 931 F.Supp. 1269, 1276 (D.Md. 1996) (stating users could only obtain a consumer report "if they had a permissible purpose").

Plaintiff argues that CCA violated § 1681b(a) when it accessed Plaintiff's credit report on February 21, 2003, because it did so without a "permissible purpose" as defined under the

---

[16] As CCA correctly points out, Plaintiff implies that § 1681b(a) applies only to those furnishing credit reports, and is inapplicable to the actions of debt collectors such as CCA. Although the court disagrees with this statutory interpretation, *see Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987), assuming this is Plaintiff's position, it would appear that Plaintiff argues that CCA violated a provision that was not applicable to CCA's actions. Plaintiff fails to explain this contradiction.

statute.  Plaintiff specifically argues that CCA accessed the report to see "whether he had assets or a credit history to justify further collection efforts."  Paper no. 17, at 15.  CCA does not contest that it accessed the report, but asserts that it did not violate the FCRA because it accessed the report in order to pursue collection efforts, which is a valid purpose under § 1681b(a)(3)(A).

Section 1681b(a)(3)(A) provides that there is a permissible purpose to furnish a report to a person if the consumer reporting agency has a "reason to believe" that the user "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."  This "reason to believe" standard has likewise been applied to users of the reports.  *Korotki*, 931 F.Supp. at 1276; *see also Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F.Supp. 1263, 1278 (D.Md. 1992) (finding user had a permissible purpose to access credit report where user believed, but did not "know," whether consumer had misappropriated money).  As applied to a user, this means that if a user had a reason to believe that a consumer owed a debt, it would have a permissible purpose to access the consumer's credit report.  *See* § 1681b(a)(3)(A); *Korotki*, 931

33

F.Supp. at 1277.   In addition, once authorized, the FCRA does not limit access to a consumer's credit information, and there is no violation of the statute where a user accesses a "full credit report," even when it may not need all of the credit information included in such report.   *Korotki*, 931 F.Supp. at 1278.

Here, CCA has produced evidence of a permissible purpose in accessing Plaintiff's credit report – to collect a debt that it had "reason to believe" was owed to UB.   *See id*. at 1277-78 (noting that agent hired by creditor is also entitled to obtain credit report).   "The defendants, having produced evidence of a permissible purpose, are entitled to summary judgment unless plaintiff, who bears the burden of going forward to show lack of a proper purpose, produces some evidence upon which a jury could find to the contrary."   *Id*. at 1279.   Like the plaintiff in *Korotki*, other than mere speculation, Plaintiff fails to offer any evidence to establish that CCA accessed Plaintiff's credit report in bad faith, or for reasons other than attempting to collect on a debt it had reason to believe was owed to its client, UB.   *See id*.   Although Plaintiff attempts to distinguish *Korotki* by noting the debt was actually owed in that case, this distinction is immaterial to *Korotki*'s "reason to believe" standard; by its own terms, "reason to believe" implies that

there may be instances where a debt turns out not to be valid.
*See id.*   The fact that the debt was not owed in this case is
therefore immaterial.

   4.   **Count 4:   State Law Tort Claims**

   Plaintiff asserts state law tort claims of defamation, false
light invasion of privacy, and negligence.   These claims are
preempted under the FCRA.

   Section 1681h(e) states:

> Except as provided in sections 1681n
> and 1681o of this title, no consumer
> may bring any action or proceeding in
> the nature of defamation, invasion of
> privacy, or negligence with respect to
> the reporting of information against
> any consumer reporting agency, any user
> of information , *or any person who*
> *furnishes information to a consumer*
> *reporting agency*, based on information
> disclosed pursuant to section 1681g,
> 1681h, or 1681m of this title, or *based*
> *on information disclosed by a user of a*
> *consumer report to* or for *a consumer*
> *against whom the user has taken adverse*
> *action*, based in whole or in part on
> the report *except* as to false
> information furnished with malice or
> willful intent to injure such consumer.

*Id.* (emphasis added).[17]   Plaintiff first argues that this
preemption provision is inapplicable to CCA because CCA is not

_____

   [17] Neither § 1681n nor § 1681o are applicable in this case
because CCA did not violate the FCRA.

a "user" who took adverse action against Plaintiff.  Plaintiff's reading of the statute is incorrect, and in direct opposition to the court's interpretation in *Spencer*, 81 F.Supp.2d at 597.  In *Spencer*, the plaintiff brought a defamation claim against a collection agency, among others, for making "false and defamatory statements to one or more credit reporting agencies by falsely reporting her debt."  *Id*.  Like the present case, the plaintiff in *Spencer* learned about the reported debt when a bank denied her loan application.  The court found that § 1681h(e) applied because the claim was against a "furnisher of information," the collection agency, based on allegedly defamatory information that was disclosed to the plaintiff by a "user of a consumer report," the bank, who took adverse action against the plaintiff by denying the loan.  The circumstances in this case are highly similar.  Plaintiff asserts defamation, invasion of privacy, and negligence claims against a "furnisher of information," CCA, based on information provided to Plaintiff by a "user," SunTrust Mortgage, Inc. ("SunTrust"), who took adverse action against Plaintiff by denying him a pre-approval letter and a loan for a house.  Paper no. 17.  The court cannot find any distinction between these two cases to sustain Plaintiff's argument that the preemption provision is inapplicable.  In fact, recognizing that with regard to the

36

application of §1681h(e), *Spencer* is directly on point with this case, Plaintiff argues that the court in *Spencer* "confused and misapplied" the statutory terms.  Paper no. 17, at 20.  This court disagrees, and finds that the preemption provision is applicable.

Second, Plaintiff argues that even if § 1681h(e) is applicable, the state law claims are not preempted because CCA acted "with malice or willful intent to injure" when it furnished information to the CRAs, and therefore the claims fall under the exception provided for in § 1681h(e).  To prove "malice," Plaintiff must show that CCA "acted with reckless disregard to the truth or falsity of the reported debt." *Spencer*, 81 F.Supp.2d at 598.  To establish "reckless disregard," Plaintiff must show that CCA "either (1)made the statement with a 'high degree of awareness of . . . probable falsity'; or (2) actually entertained serious doubts as to the truth of the statement."  *Id*. at 598 (quoting *Foretich v. Capital Cities/ABC*, 37 F.3d 1541, 1551 n.8 (4th Cir. 1994)).

The evidence shows that CCA had no reason to know the debt was invalid when it initially reported to the CRAs in March of 2003.  Moreover, once CCA found out that Plaintiff disputed the debt, it took affirmative steps to correct the situation by notifying the CRAs of the dispute so that it could be noted on

37

Plaintiff's credit report, and by contacting UB to verify the debt.  Once UB reported to CCA that the debt was invalid, CCA contacted the CRAs to have the debt deleted from Plaintiff's credit file.  The only evidence that Plaintiff offers to show CCA may have acted with malice is to argue that the debt was barred under Maryland's statute of limitations.[18]  Assuming the debt was time barred,[19] CCA was not precluded from attempting to collect, *Wallace v. Capital One Bank*, 168 F.Supp.2d 526, 528 (D.Md. 2001), and the act of reporting such a debt to CRAs has been found to be insufficient to establish malice.  *See Spencer*, 81 F.Supp.2d at 598.  In sum, Plaintiff fails to establish that at any time CCA reported information to CRAs with malice or willful intent to injure, and Plaintiff's tort claims are preempted under § 1681h(e).

To the extent that Plaintiff's tort claims are based on CCA's reporting to the CRAs that the debt was disputed, the claims are also preempted under 15 U.S.C. § 1681t(b)(1)(F), which preempts state laws that regulate § 1681s-2 subject matter

---

[18] Plaintiff also appears to argue that CCA acted with malice because it had a duty to have the debt removed from Plaintiff's credit report pending its verification, but as previously noted, CCA had no such affirmative duty.

[19] Even if the debt was barred under the statute of limitations, CCA's attempts to collect would not constitute malice.  Thus, the court need not consider whether the debt was actually barred.

"relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."  Under § 1681s-2, a debt collector has a duty to provide CRAs with notice that a debt is disputed, and must conduct an investigation to determine if the information on the debtor's credit file is inaccurate.  If the results of the investigation reveal that the information is incorrect, the debt collector has a duty to report those results to all CRAs to which the debt collector previously reported the debt, and those that "compile and maintain files on consumers on a nationwide basis."  *Id.*  Hence, the FCRA authorized CCA to report the debt as disputed and take follow-up measures to investigate.  "If Maryland tort law imposed such liability for those actions, that law would be inconsistent with the FCRA and, therefore, § 1681t would preempt that law."  *Korotki*, 931 F.Supp. at 1280.

## IV.  Attorneys' Fees

CCA seeks attorneys' fees pursuant to 15 U.S.C. §§ 1692k(a)(3) and 1681n(c),[20] which allow a court to award fees if Plaintiff's claims were "brought in bad faith and for the purpose of harassment." § 1692k(a)(3).  Bad faith is "not simply bad judgment or negligence, but implies the conscious doing of

---

[20] CCA's Motion contains a typographical error and cites § 1682n(c).

a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Black's Law Dictionary* 139 (6th ed. 1990); *see In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000). *See also Glick v. Koenig,* 766 F.2d 265, 270 (7th Cir. 1985) (stating bad faith may be shown "where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass . . . rather than to obtain a favorable judgment"). The Fourth Circuit has stated that whether a plaintiff acted in bad faith is a "fact-dependent" inquiry. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 (4th Cir. 1999) (affirming sanctions granted under §1692k(a) and Fed.R.Civ.P. 11 where court found claim was "utterly without factual foundation").

CCA argues that it is entitled to "reasonable fees in relation to the preparation and filing of its Motion and its Reply to Plaintiff's Opposition. Paper no. 18, at 23. It notes that: (1) after receiving CCA's Motion that set forth CCA's actions in connection with Plaintiff's debt, Plaintiff failed to "reevaluate his claims" based upon the new information, instead continuing to assert knowingly groundless contentions; (2) after being made aware of the information in CCA's Motion, Plaintiff made no effort to correct inaccurate factual statements

presented in the original complaint, when drafting the amended complaint; and (3) Plaintiff's Opposition provided "virtually no" evidence in rebuttal, and instead "repeatedly made unsubstantiated accusations or misstated and ignored" CCA's evidence.  Paper no. 18, at 23.

The basis for CCA's argument is that Plaintiff failed to take certain actions (e.g,. correct facts, reevaluate claims) after CCA filed its Motion.  CCA then asks this court to award fees in relation to the preparation of the Motion.  Because CCA had already prepared and filed the Motion, regardless of what Plaintiff did or did not do in response, Plaintiff's actions did not cost CCA any additional fees.

An award of fees in relation to the preparation and filing of CCA's Reply is also not warranted on these facts.  It is uncontested that CCA attempted to collect on and reported to the CRAs a debt that Plaintiff did not owe.  In addition, evidence shows that Plaintiff was denied financing for a home because this inaccurate debt was listed on his credit report.  Despite the fact that the Plaintiff could not successfully establish CCA's liability on any of the asserted claims, there is no indication on the record that Plaintiff acted with a dishonest purpose or with ill will, or that Plaintiff's claims were "utterly without factual foundation." *Chaudhry*, 174 F.3d at 411.

For this reason, CCA's request for an award of attorneys' fees will be denied.

**V.    Motion to Stay Pending Discovery**

**A.    Standard of Review**

Because Plaintiff has not produced evidence sufficient to withstand summary judgment, it is necessary to address his claim that an opportunity to conduct discovery should precede consideration of CCA's Motion. Generally speaking, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); Fed.R.Civ.P. 56(f). "'Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party[,]'" and when a case involves complex factual questions about intent and motive. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247 (4th Cir. 2002), quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2741 at 241 (3rd ed. 1998).

A party opposing summary judgment may not merely assert in the opposition that discovery is necessary. Rather, the party must file an affidavit that "particularly specifies legitimate

42

needs." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).[21]
As this court has noted, a request for discovery will not be
granted if the party merely wishes to conduct a "fishing
expedition" in search for evidence that may be helpful. *Morrow
v. Farell*, 187 F.Supp.2d 548, 551 (D.Md. 2002).  In addition to
the  specificity requirement, a party must present reasons why
it cannot put forth the necessary opposing evidence, *see Pine
Ridge Coal Co. v. Local 8377, United Mine Workers of America*,
187 F.3d 415, 421-22 (4th Cir. 1999), and must establish that the
desired evidence could be sufficient to create a genuine issue
of material fact.  *See McLaughlin v. Murphy*, 372 F.Supp.2d 465,
470 (D.Md. 2004).  If a party meets this burden, "the court may
refuse the application for judgment or may order a continuance
to permit affidavits to be obtained or depositions to be taken
or discovery to be had or may make such other order as is just."
Fed.R.Civ.P. 56(f).

   **B.   Analysis**

---

   [21] An affidavit may not be absolutely necessary if the party
makes objections that satisfy the purpose of providing an
affidavit and is not lax in pursuing discovery. *Harrods Ltd.*,
302 F.3d at 244; *Chernova v. Elec. Sys. Servs., Inc.*, 247
F.Supp.2d 720, 723 (D.Md. 2003)(noting an affidavit is not
absolutely necessary to satisfy Rule 56(f), but movant must show
that 56(f) protections are invoked in good faith and to "afford
the trial court the showing necessary to assess the merit of a
party's opposition").

Plaintiff filed an affidavit from Plaintiff's counsel outlining information that Plaintiff would "determine and/or substantiate" by conducting discovery. Paper no. 20. There generally are six categories of information sought, but all are either fishing exercises or immaterial.

Plaintiff first asserts that discovery is necessary to obtain information regarding CCA's "false communications" to Equifax, a CRA, after Plaintiff disputed the debt, but there is no evidence that any communication took place between CCA and Equifax outside of CCA reporting the dispute. Moreover, there is nothing to indicate the credibility of evidence on the record is in any way questionable.

Next, Plaintiff argues that he should be able to determine whether SunTrust based its decision not to provide a pre-approval letter or financing to Plaintiff on the information in Plaintiff's Equifax report. This is a collateral issue because, even if Plaintiff establishes its truth, Plaintiff would not show there is a genuine issue of material fact sufficient to survive a summary judgment motion. Plaintiff would still need to provide evidence to establish CCA's liability.

Plaintiff further wants to investigate "the veracity of CCA's collector notes[,]" and, more generally, "the validity, accuracy and completeness of the factual bases for the Affidavit

and Exhibits that [CCA] relies on for summary judgment . . . ."
Paper no. 20.   Although the information Plaintiff seeks to
"substantiate" is material, a mere speculation that the data
might not be credible is insufficient to survive summary
judgment, and Plaintiff fails to provide any evidence that CCA's
credibility is questionable. *Korotki*, 831 F.Supp. at 1279. *See
also Wilson v. Clancy*, 747 F.Supp. 1154, 1158 (D.Md. 1990)
(stating a challenge to the credibility of evidence does not
generate a "triable issue unless plaintiff produces competent
evidence that contradicts"). Further, Plaintiff fails to show
how discovery could create a genuine issue of material fact.
For example, Plaintiff provides no evidence that a request for
production would generate anything but the identical collector
notes that Plaintiff already has access to, or that deposing
CCA's affiant, John Burns, would result in testimony contrary to
that contained in his affidavit. *See* paper no. 9, ex. 1.

Plaintiff then seeks information regarding CCA's "patterns,
practices, procedures and policies" used "in the processing of
collection accounts, including Plaintiff's account." Paper no.
20. Plaintiff provides no explanation of why information
regarding general practices and procedures would create a
genuine issue of material fact sufficient to make Plaintiff's
opposition meritorious. Evidence of procedures relating

45

specifically to Plaintiff's account is already in the record through CCA's Motion, including the attached affidavit and accompanying exhibits. Paper no. 9, ex. 1, and accompanying documentation. To the extent that Plaintiff merely seeks to challenge the evidence in the record without any showing that the evidence lacks credibility, the request is an insufficient basis to grant a motion to stay. *See Korotki*, 831 F.Supp. at 1279; *Wilson v. Clancy*, 747 F.Supp. at 1158.

Plaintiff further wants to investigate "[CCA]'s knowledge at various times in its collection process against Plaintiff including communications with [UB]." Paper no. 20. First, CCA's key communications with UB regarding the debt are already in the record, *see e.g.,* paper no. 9, exs. A, C, and Plaintiff does not appear to challenge the validity of these communications. Instead, Plaintiff appears to be seeking time to conduct a broad inquiry into "CCA's knowledge," without providing any reason why this would create a genuine issue of material fact or would not be duplicative of information already in the record. This generalized "need" is not adequate to warrant granting the requested stay. *See Nguyen*, 44 F.3d at 242.

Finally, Plaintiff wants to explore "the reporting, content of, and veracity of Plaintiff's credit reports." Paper no. 20.

46

It is unclear exactly what Plaintiff is seeking in this request, but as Plaintiff should already know, discovery is not necessary to access Plaintiff's own credit report. *See* 15 U.S.C. 1681g. In fact, based on the materials Plaintiff previously submitted to this court, Plaintiff has already had access to his credit report on numerous occasions. Therefore, this request does not warrant staying the court's decision. Because none of Plaintiff's asserted discovery needs justifies granting a stay, Plaintiff's motion will be denied.

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion to stay will be denied. Plaintiff's motion to file a surreply will be granted in part and denied in part. CCA's motion to dismiss, or in the alternative, for summary judgment, will be granted on all counts. A separate Order will follow.

                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge

                              September 12, 2005